UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONGGUAN GUANKUN TRADING CO., LTD., et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE ESTATE OF BILLY CHEN, et al.,<br><br>                    Defendants. | 24 Civ. 4573 (DEH)<br><br>**<u>OPINION</u><br><u>AND ORDER</u>** |

DALE E. HO, United States District Judge:

Dongguan Guankun Trading Co., Ltd., Dongguan Zhuoying Apparel Co., Ltd., and Dongguan Zhuosheng Textile Co., Ltd. (collectively, "Plaintiffs") are companies incorporated in China that procure and sell bulk orders of yarn and apparel.[1]  SAC ¶¶ 1-4, 28, 53.  Plaintiffs' customers include intermediary buyers, who purchase Plaintiffs' goods and then sell them to retailers in the United States.  *Id.* ¶¶ 27-28.  Defendants are corporations and individual owners or officers of corporations that served as Plaintiffs' intermediary buyers.  *Id.* ¶¶ 7, 12, 28, 34.

Plaintiffs bring eight claims against all Defendants collectively: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) goods sold and delivered at agreed price, (4) account stated, (5) fraud, (6) unjust enrichment, (7) constructive trust, and (8) rescission.  *Id.* ¶¶ 83-148.  Plaintiffs seek to hold Defendants jointly and severally liable, under a theory of corporate alter ego liability.  *Id.* ¶¶ 20, 34-52.  Pending before the Court are Defendants Global Fashion Icon, Inc.'s and Jeanette Lau's Motions to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 136, 160.  For the reasons set

---

[1] Unless otherwise noted, the facts are taken primarily from the Second Amended Complaint, ECF No. 125 ("SAC").

forth below, the Motions are **GRANTED** in part as to Plaintiffs' claims of fraud and rescission and **DENIED** as to all other claims.

## BACKGROUND

The following facts are assumed to be true for purposes of the Motions to Dismiss. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiffs are three companies incorporated in China that procure and sell bulk orders of yarn and apparel. SAC ¶¶ 1-4, 28, 53. Plaintiffs' customers include intermediary buyers, who purchase Plaintiffs' goods and then sell them to retailers in the United States. *Id.* ¶¶ 27-28. Defendants are corporations and individual owners or officers of corporations that served as Plaintiffs' intermediary buyers. *Id.* ¶¶ 7, 12, 28, 34.

Plaintiffs and Defendants entered into sales contracts in the form of Purchase Orders for the shipment of Plaintiffs' goods. The Corporate Defendants would receive Purchase Orders from US-based retailers, then forward the Purchase Orders to the Plaintiffs. *Id.* ¶ 29. This would prompt transactions in which Plaintiffs would ship the products specified in the orders to the Corporate Defendants' U.S. warehouses, where the Corporate Defendants would then facilitate the transport of products to the final buyers. *Id.* In addition to fulfilling Purchase Orders directly, Plaintiffs also fulfilled Purchase Orders with Defendants through export agents, Jiangxi Zhonghui Cloud chain Supply Chain Management Co., Ltd., Xiamen C&D Enterprise Co., Ltd., and Dongguan Dongchen Textile Co., Ltd. *Id.* ¶¶ 33, 67, 70, 73.

Billy Chen founded all ten Corporate Defendants, *Id.* ¶ 5, and at the time of filing was listed as the registered agent or owner of six Corporate Defendants, including Global Fashion Icon, Inc. *Id.* ¶¶ 6-10, 13. Mr. Chen's mother or father are listed as the registered agent or owner of the remaining four Corporate Defendants. *Id.* ¶¶ 11-12, 14-15. Co-Defendant Jeanette Lau is the CEO of two the Corporate Defendants, *Id.* ¶¶ 7, 12, and an employee of Defendant company Global

2

Fashion Icon, Inc., where she was a signer for the company's corporate account. *Id.* ¶¶ 44-45; Pls.' Opp. to Mot. to Dismiss at 3-4, ECF No. 170. Mr. Chen, along with Co-Defendants Jerry Lau and Pulian Lee—Mr. Chen's wife—also held actual or de facto leadership and decision-making roles in the Corporate Defendants. SAC ¶¶ 34-37.

The Corporate Defendants operated in close concert with one another, and Plaintiffs allege instances of Purchase Orders being placed by one Corporate Defendant, but corresponding payment being made by another. *Id.* ¶ 55. Plaintiffs allege that the Corporate Defendants routinely made payments to one another to cover business expenses, in a manner inconsistent with each company being its own independent profit center. *Id.* ¶¶ 47-48. They allege that proceeds from completed Purchase Orders would be routed among the Corporate Defendants in ways that left some, including Global Fashion Icon, Inc., with a surplus of assets whereas others, including those with outstanding payment obligations to the Plaintiffs, would be left undercapitalized. *Id.* ¶¶ 49-51. They also allege that Individual Defendants Billy Chen and Jerry Lau personally paid or offered to pay some of the debts and obligations of the Corporate Defendants as a collective. *Id.* ¶¶ 48, 61, 75.

Beginning in 2017, Defendants began failing to pay for completed shipments of goods. *Id.* ¶ 53. Plaintiffs allege that Defendants forged Purchase Orders that misled and induced Plaintiffs to engage in additional transactions with Defendants under the false representation that in those transactions, Defendants would serve as intermediary buyers for well-established, credit-worthy retailers. *Id.* ¶ 52. Plaintiffs allege that, in fact, the forged Purchase Orders were for sales by Defendants to less credit-worthy entities that defaulted on payments, resulting in losses that Defendants ultimately passed on to Plaintiffs through nonpayment of delivered goods. *Id.* ¶ 52.

In March 2023, Defendant Billy Chen signed two agreements with Plaintiffs laying out plans to repay the outstanding balances among the Corporate Defendants to Plaintiffs and their

export agents. *Id.* ¶¶ 60-61, 75-76. Between 2023 and 2024, Mr. Chen made partial payments toward the outstanding balances. *Id.* ¶ 64. However, at the time of his death on February 8, 2024, Plaintiffs allege that neither agreement had been paid in full. *Id.* ¶¶ 58, 65-66, 77. Plaintiffs allege that following Mr. Chen's death, four of the Corporate Defendants—including Global Fashion Icon, Inc.—entered into an agreement to return 580,000 units of Plaintiffs' unsold goods, but that the outstanding balances of their agreements with Mr. Chen remain unpaid. *Id.* ¶¶ 58-59. They further allege that Defendants have refused to furnish original Purchase Orders from the final buyers of Plaintiffs' goods, which might enable Plaintiffs to recoup losses through insurance or to investigate the extent to which Defendants fabricated any Purchase Orders. *Id.* ¶ 56. Defendants Global Fashion Icon, Inc. and Jeanette Lau disclaim responsibility for any remaining outstanding balances. SAC ¶¶ 65-66, 77.

On June 14, 2024, Plaintiffs filed a Complaint, ECF No. 1, followed by a Motion for a Temporary Restraining Order, ECF No. 34, on July 19, 2024. This Court ordered a Show Cause Hearing on the issuance of a Temporary Restraining Order and, pending that hearing, temporarily enjoined Defendants from transferring, concealing, or otherwise moving any assets from their commercial accounts. ECF No. 36. Following the Show Cause Hearing, the Court dissolved the restraint on assets as to Defendant Global Fashion Icon, Inc. ECF No. 84.

The Operative Complaint is the Second Amended Complaint, *see* ECF No. 125. On December 23, 2024, Defendant Global Fashion Icon, Inc. filed a Motion to Dismiss the Second Amended Complaint, ECF No. 136. Defendant Jeanette Lau filed a Motion to Dismiss the Second Amended Complaint on February 13, 2025, ECF No. 160. Both Motions to Dismiss are now fully briefed and pending before the Court.

4

**LEGAL STANDARD**

Defendants Global Fashion Icon Inc. and Jeanette Lau each bring their Motions to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Id.* at 106-07.  But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"  *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**DISCUSSION**

**I.      Piercing the Corporate Veil**

**A.      Legal Principles[3]**

For each of their claims, Plaintiffs seek to hold Defendants jointly and severally liable under a theory that the various Defendants acted as alter egos of one another.  SAC ¶¶ 34-52. Therefore, assessing the sufficiency of Plaintiffs' claims requires, as a threshold matter, a determination of whether Plaintiffs have sufficiently alleged a basis to pierce the corporate veil of Defendants Global Fashion Icon, Inc. and Jeanette Lau.  "The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation,

---

[2] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[3] Plaintiffs bring their claims under New York law, and the parties do not dispute that New York law therefore applies to Plaintiffs' veil-piercing allegations.

and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Morris v. N.Y. State Dep't of Tax'n and Fin.*, 82 N.Y.2d 135, 140 (1993). This "privilege is not without its limits," however, and "courts will disregard the corporate form . . . whenever necessary to prevent fraud or to achieve equity." *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966). An attempt "to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners," which in turn "presupposes that the corporation is liable." *Morris*, 603 N.Y.S.2d at 141, 144.

"Under New York law, a party seeking to pierce the corporate veil must generally show that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

To determine the first element, whether the owners exercised complete domination of the corporation with respect to the transaction attacked, courts

> consider factors that would tend to show that defendant was a dominated corporation, such as (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

A court is "not required to find that every factor is present, and no one factor is dispositive." *Shantou Real Lingerie Mfg. Co., Ltd. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018). "The ultimate question is whether the policy behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation." *N.Y. State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014).

To satisfy the second element, whether such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury, the party seeking to pierce the corporate veil must demonstrate "1) the existence of a wrongful or unjust act toward that party, and 2) that the act caused that party's harm." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 465 (S.D.N.Y. 2005). The "diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced." *Id.* at 476.

### B.    Global Fashion Icon, Inc.

As set forth below, Plaintiffs have sufficiently alleged that the Individual Defendants exercised domination and control over Global Fashion Icon, Inc. and used that domination and control to commit a fraud or wrong against Plaintiffs which caused Plaintiffs' injury. [4] The Court therefore finds a sufficient basis to pierce the corporate veil at this stage of the litigation.

---

[4] Because Defendant Jeanette Lau moves to dismiss separately, the Court addresses whether veil piercing is appropriate as to her in the following subsection, and confines its discussion here to the relationships among the other Individual Defendants and Global Fashion Icon, Inc.

1.    Domination and Control

Plaintiffs have sufficiently alleged that the Individual Defendants exercised domination and control over Defendant Global Fashion Icon, Inc., and that Global Fashion Icon, Inc. in turn exercised domination and control over other named Corporate Defendants, such that Defendants collectively may be considered corporate alter egos.

a.    *Overlap in Ownership, Officers, Directors, and Personnel*

In their Second Amended Complaint, Plaintiffs name ten companies and four individuals as Defendants.  SAC ¶¶ 5, 16, 17-19.  Plaintiffs provide detailed allegations of overlapping ownership and staffing at the ten Corporate Defendants, including Global Fashion Icon, Inc.  Plaintiffs allege that Defendant Billy Chen is the founder and listed as the registered agent of Global Fashion Icon, Inc.  *Id.* ¶¶ 5, 6.  According to Plaintiffs' allegations, Mr. Chen was also the founder and owner of all ten named Corporate Defendants, and is listed as the registered agent of six.  *Id.* ¶¶ 5-13.  Plaintiffs allege that Mr. Chen's father or mother are listed as the registered agents of the remaining four Corporate Defendants.  *Id.* ¶¶ 11-15.  Co-Defendant Jeanette Lau is alleged to be an employee of Global Fashion Icon, Inc., where she was a signer for the company's corporate account.  Pl's Opp. Mot. to Dismiss at 2, ECF No. 170.  She is also alleged to be the CEO of two Corporate Defendants owned by Mr. Chen or Mr. Chen's father.  SAC ¶¶ 7, 12.

Taking these allegations as true, as the Court must at this stage of the case, this factor weighs strongly in favor of Defendants'—including Global Fashion Icon, Inc.'s—collective domination and control.

b.    *Lack of Corporate Independence*

In the Second Amended Complaint, Plaintiffs provide several allegations that the Corporate Defendants acted as a collective, rather than as independent corporations, with several additional *Passalacqua* factors weighing in favor of a determination of Global Fashion Icon, Inc.'s

8

domination and control.  Plaintiffs allege that the Corporate Defendants and individuals, including Global Fashion Icon, Inc., lacked independent business discretion; did not operate at arm's length; were not treated by their owners as independent profit centers, with assets distributed in ways that left some of the Corporate Defendants deliberately undercapitalized; and collectively entered into agreements to pay one another's debts.

According to Plaintiffs' pleadings, the Corporate Defendants would place purchase orders as a collective, with orders placed under the name of one company, but responsibility for payment placed with another.  SAC ¶ 43.  The Corporate Defendants allegedly commingled assets, with payments flowing between them that were inconsistent with each company acting as its own independent profit center.  *Id.* ¶ 46-47.  Plaintiffs allege that the commingling of assets left some subset of the Corporate Defendants deliberately undercapitalized, while others like Global Fashion Icon, Inc. maintained a stockpile of assets.  *Id.* ¶¶ 50-51.  Plaintiffs allege that individual Defendant Billy Chen acknowledged and signed promissory notes to repay the debts of the Corporate Defendants as a collective.  SAC ¶¶ 60-66, 75-77.  According to Plaintiffs' pleadings, four of the Corporate Defendants—including Global Fashion Icon, Inc.—entered into a collective agreement to return unsold units of product stored at warehouses under their collective control to Plaintiff following Mr. Chen's death.  SAC ¶ 57-59.

Again, at the Motion to Dismiss stage, the Court takes Plaintiffs' allegations as true.  These allegations strongly support a determination that Global Fashion Icon, Inc. was part of Defendants' collective domination and control.

### c.   *Weighing the Alleged Factors*

As Defendants correctly note, although the Court at the Motion to Dismiss stage accepts Plaintiffs' allegations as true, it disregards any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"  *Sacerdote*, 9 F.4th at 107 (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)).  Therefore, the Court does not base its decision on conclusory allegations such as that the Corporate Defendants shared office space and telephone numbers, *see* SAC ¶ 41, where the Second Amended Complaint does not provide more specific information to substantiate the Plaintiffs' assertion.

Weighing the other *Passalacqua* factors, however, this Court determines that Plaintiffs have pled a sufficient basis for the first element of the veil piercing analysis.  In particular, the overlapping staffing and ownership of Global Fashion Icon, Inc. and other Corporate Defendants weighs strongly toward Global Fashion Icon, Inc.'s domination and control.  Plaintiff has also adequately pled several non-conclusory indicia that Global Fashion Icon, Inc. operated closely with the other Defendants, exercising little independent business discretion and commingling assets in ways that clearly indicate domination and control.

2.    Use of Domination to Commit a Fraud or Wrong

Plaintiffs have sufficiently pled that Defendants, including Global Fashion Icon, Inc., used their collective domination and control to commit a fraud or wrong against them, satisfying the second prong of the test.  The "diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced."  *JSC Foreign Econ. Ass'n*, 386 F. Supp 2d at 476.  Plaintiffs allege that the Corporate Defendants routed their profits to Global Fashion Icon, Inc., thereby rendering other Corporate Defendants inadequately capitalized and therefore judgment-proof to creditors.  SAC ¶¶ 39-40.

Accordingly, the Court determines that Plaintiffs have sufficiently alleged a basis to pierce the corporate veil as to Global Fashion Icon, Inc.

C.    **Jeanette Lau**

As set forth below, Plaintiffs have sufficiently alleged that Jeanette Lau was involved in the domination and control over the Corporate Defendants and used that domination and control

10

to commit a fraud or wrong against Plaintiffs which caused Plaintiffs' injury.  The Court therefore finds a sufficient basis to pierce the corporate veil at this point in the litigation.  It will analyze Plaintiffs' claims against Ms. Lau under a theory of joint and several liability.

      1.      Domination and Control

Plaintiffs have sufficiently alleged that like other individual Defendants, Jeanette Lau was part of the domination and control exercised over the Corporate Defendants.  In her Motion to Dismiss, Ms. Lau brings attention to the fact that Plaintiffs emphasize the domination and control of the other three Individual Defendants in their complaint while not naming her specifically in those particular allegations.  Memo. of Law in Support of Jeanette Lau's Mot. to Dismiss ("Lau Memo") at 20, ECF No. 160-5.  Ms. Lau is correct that Plaintiffs omit her from several of their allegations against the individual Defendants, including their allegation that the other three individual Defendants exercised complete domination of the Corporate Defendants.  SAC ¶ 35. Plaintiffs also allege that "Billy and Jerry, and after Billy's passing, Pulian" de facto owned or controlled the Corporate Defendants, but again do not include Ms. Lau in these particular allegations.  SAC ¶ 37.

At the Motion to Dismiss stage, this Court takes all allegations as true and draws all reasonable inferences in the Plaintiffs' favor.  *Sacerdote*, 9 F.4th at 106-07.  Although the Plaintiffs have neglected to include Ms. Lau in the full scope of their allegations against the individual Defendants, they present several key assertions about her involvement with the Corporate Defendants, described below, which support a reasonable inference of her domination and control.

      a.      *Ms. Lau's Role as CEO of Fastlane Group Inc. and Bilco Industries Inc.*

In their Second Amended Complaint, Plaintiffs allege that two of the Corporate Defendants, Bilco Industries Inc. and Fastlane Group Inc. list Ms. Lau as their CEO.  SAC ¶¶ 7, 12.  Plaintiffs have alleged that both of these Corporate Defendants are mere shells and corporate

alter egos of the other Corporate Defendants and individuals.  SAC ¶¶ 34-48.  They note that Mr. Chen is the founder of both companies, SAC ¶ 5, that he is listed as the registered agent of Fastlane Group Inc., SAC ¶ 7, and that his father is listed as the registered agent of Bilco Industries Inc. SAC ¶ 12.  Further, they allege that Fastlane Group Inc. is one of the two Corporate Defendants that placed Purchase Orders with Plaintiffs prior to 2022.  SAC ¶ 55.  Plaintiffs allege that these transactions with Fastlane Group Inc.—presumably known to and overseen by its Chief Executive Officer Ms. Lau—are directly at issue in their claims of contractual breach and fraud against Defendants collectively.  SAC ¶¶ 53-56.  They also allege that the lack of corporate formalities adhered to by the companies, SAC ¶ 37, the deliberate undercapitalization of the companies, SAC ¶¶ 38-39, and commingling of assets by the companies, SAC ¶¶ 40, 43, indicate that they are mere alter egos of one another.  As CEO of two of the Corporate Defendants, Ms. Lau is directly implicated by these allegations.

> b.    *Ms. Lau's Role at Global Fashion Icon, Inc.*

In their Second Amended Complaint, Plaintiffs also note Ms. Lau's overlapping roles as authorized signer and as an officer in charge of decision making at several of the Corporate Defendants.  SAC ¶ 45.  In particular, they assert that Ms. Lau is authorized as a signer for a corporate account controlled by Global Fashion Icon, Inc.  SAC ¶ 45; Pls' Opp. to Mot. to Dismiss, ECF 170 at 3-4.[5]

---

[5] It is also not lost on the Court that Global Fashion Icon, Inc., and Ms. Lau are represented by the same counsel in this litigation. *See Hannah Brothers v. OSK Marketing & Communications, Inc.*, 609 F. Supp. 2d 343, 350 (S.D.N.Y. 2009) (analyzing an issue of joint venture under maritime law) ("That the defendants have been represented by the same counsel and have . . . answered as one voice might, in appropriate circumstances, indicate a disregard for the corporate form supporting "alter ego" liability.") (internal quotations omitted).

As discussed above, Plaintiffs have sufficiently alleged that Defendant company Global Fashion Icon, Inc. is a corporate alter ego of the other Defendants. Key to this determination are Plaintiffs allegations about Global Fashion Icon, Inc.'s finances, including its commingling of assets with other Corporate Defendants, SAC ¶¶ 50-51, and its entry into collective agreements to repay debts alongside other Corporate Defendants. SAC ¶¶ 57-59. These allegations squarely implicate Ms. Lau given her asserted control over Global Fashion Icon, Inc.'s corporate account.

### c.     Weighing the Alleged Factors

"There is no mechanical rule as to how many and to what degree the factors . . . must be present to pierce the corporate veil." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 18 (2d Cir. 1996). Rather, when determining whether joint and several liability is appropriate against a defendant alleged to be an alter ego, courts should apply the "overarching principle" that "liability is imposed to reach an equitable result." *Id.* (citing *Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979)).

Further development of this case may show that it is inappropriate to hold Ms. Lau jointly and severally liable for Plaintiffs' claims arising from the actions of the other Individual Defendants and companies. However, at this stage of the litigation, where it must draw all reasonable inferences in Plaintiffs' favor, the Court determines there is a sufficient basis to allow Plaintiffs' claims to proceed against her.

Based on the Plaintiffs' allegations, the Court can reasonably infer that several key *Passalacqua* factors weigh in favor of piercing the corporate veil as to Jeanette Lau. First, Plaintiffs have alleged that the Corporate Defendants—including those where Ms. Lau serves as CEO or signer of a corporate account—did not properly adhere to corporate formalities. Second, as a corollary to their allegations about Global Fashion Icon, Inc.'s domination and control, they have alleged that the Corporate Defendants under Ms. Lau's control were deliberately

13

undercapitalized.  Third, Plaintiffs have pointed out extensive overlap in ownership and staffing between the Corporate Defendants, noting Ms. Lau's overlapping roles at three Corporate Defendants as a key example.  Fourth, they have alleged that the Corporate Defendants, including those run by Ms. Lau, lacked independent business discretion.  These allegations are sufficient to plead that Ms. Lau was involved in the domination and control of the Corporate Defendants.

### 2. Use of Domination to Commit a Fraud or Wrong

Based on the same reasoning it applied to Defendant Global Fashion Icon, Inc., the Court determines that Plaintiffs have sufficiently alleged that Ms. Lau's involvement in the domination of the Corporate Defendants caused Plaintiffs a fraud or wrong.  The "diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced." *JSC Foreign Econ. Ass'n*, 386 F. Supp 2d at 476.  Plaintiffs have adequately alleged that in her capacity as CEO of two of the Corporate Defendants and a signer for the corporate account of Global Fashion Icon, Inc., Ms. Lau's control over the Corporate Defendants facilitated their alleged effort to become judgment-proof in the face of Plaintiffs' efforts to secure payments to which they were entitled.

Accordingly, Plaintiffs have sufficiently alleged a basis to pierce the corporate veil as to Jeanette Lau.

## II. Plaintiffs' Contract Claims

Having determined that Plaintiffs sufficiently allege a basis to pierce the corporate veil as to Global Fashion Icon, Inc. and Jeanette Lau, the Court now analyzes Plaintiffs' breach of contract claims under a theory of joint and several liability.

### A. Breach of Contract

To successfully bring a breach of contract claim, a plaintiff must plead: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under

14

the contract, (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

In their Motions to Dismiss, Defendants Global Fashion Icon, Inc. and Jeanette Lau challenge only the first element, noting that no contract exists between either of them and the Plaintiffs. ECF No. 136-6 at 2-3; ECF No. 160-5 at 11-12. They do not dispute Plaintiffs' allegations vis-à-vis other Corporate Defendants and individuals, namely that some Defendants issued and then failed to pay for a significant number of completed Purchase Orders, SAC ¶¶ 53-59.

The Defendants' argument fails, because at this point of the case, the Court will allow Plaintiffs' claims to proceed under a theory of joint and several liability. Plaintiffs have sufficiently alleged the existence of contracts (1) in the form of Purchase Orders entered into with the Corporate Defendants—including Fastlane, Anew, and BCL—and (2) personal guarantees with Mr. Chen. They have alleged completion of their obligations under the contracts. And they have alleged breach and damages through the Defendants' failure to pay the amount owed under the contracts.

Accordingly, Defendants' Motions as to the breach of contract claim are **DENIED**.

### B.    Breach of the Covenant of Good Faith and Fair Dealing

"Under New York law, every contract contains an implied covenant of good faith and fair dealing, which requires that no party to that contract can do anything which will destroy or injure the right of another party to receive the benefits of the contract. A party may be in breach of its implied good duty of good faith and fair dealing even if it is not in breach of its express contractual obligations." *Chase Manhattan Bank, N.A. v. Keystone Distributors Inc.*, 873 F. Supp. 808, 815 (S.D.N.Y. 1994). If a claim for the breach of the covenant of good faith and fair dealing is based

on the same factual elements of an asserted breach of contract claim, then it may be dismissed as duplicative. *Boart Longyear Ltd. v. Alliance Industries, Inc.*, 869 F. Supp. 2d 407, 416 (S.D.N.Y. 2012).

Defendants' only argument as to this claim is that no contractual obligation exists between them and the Plaintiffs. ECF No. 136-6 at 2-3; ECF No. 160-5 at 11-12. For the reasons discussed above, this argument is unavailing.

Nonetheless, if the Plaintiffs' claim of breach of the covenant of good faith and fair dealing is merely duplicative of its breach of contract claim, then it may be dismissed. *See Boart Longyear Ltd.*, 869 F. Supp 2d at 416. In their Second Amended Complaint, Plaintiffs do not simply allege that Defendants breached the covenant by refusing to pay for the goods delivered. SAC ¶ 97. Rather, they also assert that Defendants refused to provide evidence of original Purchase Orders and properly account for Plaintiffs' shipped goods in storage, thereby thwarting Plaintiffs' efforts to recoup lost costs through insurance and compelling Plaintiffs to expend additional costs and fees to independently account for lost inventory. *Id.* ¶ 97. These allegations are not merely duplicative of the claim of contractual breach arising from nonpayment.

Accordingly, Defendants' Motions as to the claim of breach of the covenant of good faith and fair dealing are **DENIED**.

### C.    Goods Sold and Delivered at Agreed Price

"Under the New York UCC, to recover on a claim for goods sold and delivered, a plaintiff must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods." *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 571 (S.D.N.Y. 2013).

As discussed above, in their Motions to Dismiss, Defendants Global Fashion Icon, Inc. and Jeanette Lau argue only that Plaintiffs cannot meet the first element because no contract exists

between them and the Plaintiffs.  ECF No. 136-6 at 2-3; ECF No. 160-5 at 11-12.  They do not dispute Plaintiffs' allegations vis-à-vis other Corporate Defendants and individuals, namely that some Defendants issued and then failed to pay for a significant number of completed Purchase Orders, SAC ¶¶ 53-59.  For the same reasons discussed above, this argument is unavailing.

Accordingly, Defendants' Motions as to the claim of goods sold and delivered are **DENIED**.

### D.    Account Stated

"Under New York law, an 'account stated' refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owners I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009).  To bring an account stated claim, "the plaintiff must allege that (1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated."  *Id.* at 198.

Plaintiffs allege they presented to Mr. Chen their collective unpaid amounts from the Corporate Defendants.  SAC ¶¶ 60, 75.  They allege Mr. Chen accepted the amounts as correct, and he signed two personal guarantees for repayment.  *Id.* ¶¶ 61, 75.  Defendants' only argument is that no account was presented to Global Fashion Icon, Inc. or to Jeanette Lau, specifically.  ECF No. 136-6 at 3; ECF No. 160-5 at 12.  For the same reasons discussed above, this argument is unavailing.

Accordingly, Defendants' Motions as to the claim of account stated are **DENIED**.

### III.    Plaintiffs' Fraud Claim

"To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Banque Arabe et Internationale D'Investissement v.*

17

*Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995). "Fed R. Civ. P. 9(b) states that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' The Second Circuit 'has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *EED Holdings v. Palmer-Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 279 (S.D.N.Y. 2004) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

The Defendants argue that Plaintiffs' fraud claim must be dismissed because they fail to identify a specific instance of fraud or forgery giving rise to the claim. ECF No. 136-6 at 5-6; ECF No. 160-5 at 3-4. Their position is that to comply with the heightened pleading requirement of Rule 9(b), the Plaintiffs must identify a specific Purchase Order alleged to be forged and the specific role that Global Fashion Icon, Inc. and Jeanette Lau played in the forgery. ECF No. 136-6 at 6; ECF No. 160-5 at 4.

The heightened pleading requirements of Rule 9(b) require plaintiffs to allege the elements of their fraud claim with sufficient specificity to give defendants notice of the charges against them. *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985). While plaintiffs bringing a claim of fraud may, in certain circumstances, satisfy Rule 9(b) with allegations of a somewhat general nature, *see, e.g.*, *In re Ann Taylor Stores Sec. Litig.*, 807 F. Supp. 990, 1004 (S.D.N.Y. 1992) (holding that plaintiffs satisfied Rule 9(b) by alleging generally that an organization's spokesperson—rather than a specifically identified individual—made fraudulent statements), they must still identify the *specific statement* alleged to be fraudulent. *See Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004).

Here, Plaintiffs have alleged that in some of their Purchase Orders presented to the Plaintiffs, Defendants falsely represented the identities of final buyers. SAC ¶ 31. But as

18

Defendants note, Plaintiffs fail to point to a specific Purchase Order—or even specific subset of Purchase Orders—alleged to be fraudulent.  Plaintiffs' allegations are thus insufficient to satisfy the heightened pleading requirement of Rule 9(b).  Their claim of fraud must therefore be dismissed.

Accordingly, Defendants' Motions as to the claim of fraud are **GRANTED**.

## IV.    Unjust Enrichment

The "theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation marks omitted).  To bring a claim for unjust enrichment, a Plaintiff must establish "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed because is vitiated by the existence of written contracts, and because it is duplicative of Plaintiffs' breach of contract claims.  ECF No. 136-6 at 3-5; ECF No. 160-5 at 12-13.  However, where there is a dispute as to the validity or enforceability of the contracts, a party may bring an unjust enrichment claim in the alternative to its breach of contract claim.  *See Net2Glove Intern., Inc. v. Time Warner Telecom. of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003).  Defendants' argument is unavailing because they dispute the existence of contractual obligations between them and the Plaintiffs.  ECF No. 136-6 at 2-3; ECF No. 160-5 at 11-12.

Plaintiffs have adequately pled in the alternative that Defendants benefitted through nonpayment at the Plaintiffs' expense, and that equity and good conscience entitle the Plaintiffs to repayment.  SAC ¶¶ 123-29.

Accordingly, Defendants' Motions as to the claim of unjust enrichment are **DENIED**.

## V.    Constructive Trust

Plaintiffs bring a claim for the equitable remedy of constructive trust in the alternative to their contract claims.  SAC ¶ 131.  "To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir. 1987).

Defendants argue that there is no confidential or fiduciary relationship between them and the Plaintiffs, that they made no express or implied promise to Plaintiffs, and that Plaintiffs did not make a transfer in reliance on that promise.  ECF No. 136-6 at 5; ECF No. 160-5 at 13-14.

Plaintiffs have sufficiently alleged a confidential or fiduciary relationship with the Defendants.  Absent an enforceable contract, Plaintiffs have adequately pled that Defendants assumed a fiduciary duty in assuming control of Plaintiffs' products as intermediaries between Plaintiffs and final buyers who provided ultimate payment for delivery.  *Cf Winklevoss Capital Fund, LLC v. Schrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019) (Plaintiffs adequately pled the presence of a fiduciary relationship where Defendant accepted their funds and acted as a broker for the purchase of a final product).

Absent an enforceable contract, Plaintiffs have sufficiently alleged that the Purchase Orders amount to express promises to provide payment in exchange for the delivery of goods.  SAC ¶¶ 29-31.  They have also sufficiently alleged that they effected delivery of goods in reliance on the Purchase Orders.  *Id.*  Defendants' arguments as to the insufficiency of these two elements fail.

Defendants further argue that Plaintiff has not sufficiently pled that they were unjustly enriched.  ECF No. 136-6 at 5; ECF No. 160-5 at 13-14.  As discussed above in addressing Plaintiffs' claim of unjust enrichment, this argument is unavailing.

Accordingly, Defendants' Motions as to the claim of constructive trust are **DENIED**.

## VI.    Rescission

"Rescission is an extraordinary remedy and is not available when there is an adequate remedy at law." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014) (citing *Ellington v. Sony/ATV Music Publ'g LLC*, 925 N.Y.S.2d 20, 22 (2011)). "The effect of rescission is to declare the contract void from its inception and to put or restore the parties to *status quo*." *Id.* at 165 (citing *Cnty. of Orange v. Grier*, 817 N.Y.S.2d 146, 147 (2006)).

Defendants argue that rescission is inappropriate because they disclaim any contractual obligations between themselves and the Plaintiffs. ECF No. 136-6 at 3; ECF No. 160-5 at 12. This argument fails for the same reasons discussed above regarding the Plaintiffs' other contract claims.

However, the Court determines that Plaintiffs have not sufficiently demonstrated a need for the extraordinary remedy of rescission. They allege that their harms arise from nonpayment of Purchase Orders and Mr. Chen's two personal guarantees. SAC ¶ 142. Because these harms are reducible to money damages, there is an adequate remedy at law. *Ward*, 3 F. Supp. 3d at 165. The equitable remedy of rescission is therefore inappropriate and Plaintiffs' claim of rescission should be dismissed.

Accordingly, Defendants' Motions as to the claim of rescission are **GRANTED**.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Motions to Dismiss filed by Defendants Global Fashion Icon, Inc. and Jeanette Lau to Dismiss Plaintiffs' Second Amended Complaint are **GRANTED IN PART** and **DENIED IN PART**. Specifically, the claims of fraud and rescission are dismissed, while all other claims survive.

The parties are directed to file a joint status letter within seven (7) days of the date of this Order proposing next steps in this litigation before Magistrate Judge Tarnofksy.  The letter shall address (1) the current status of discovery and what discovery remains to be taken; (2) an amended proposed case management plan; (3) whether the parties seek a referral to the District's Mediation Program or a settlement conference before Magistrate Judge Tarnofksy; and (4) any other matters that the parties wish to address.

The Clerk of Court is respectfully requested to terminate ECF Nos. 136 and 160.

SO ORDERED.

Dated: February 13, 2026

New York, New York

_____
DALE E. HO
United States District Judge